IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

RECEIVED
FILED
JAN 31 2006
CLERK U.   OF TEXAS
WE
BY

| | | |
|---|---|---|
| RIGOBERTO AVILA, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. EP-O4-CA-419-FM |
| | § | (Death penalty case) |
| DOUG DRETKE, Director, | § | (Judge Frank Montalvo) |
| Texas Department Of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

Filed 2-1-06
Clerk, U. S. District Court
Western District of Texas
By _____
Deputy

## RESPONDENT DRETKE'S ORIGINAL ANSWER
## WITH BRIEF IN SUPPORT, INCLUDING RESPONSE IN OPPOSITION
## TO MOTION FOR AN EVIDENTIARY HEARING

In a Texas state court, Avila was convicted and sentenced to die for the beating death of nineteen-month-old Nicolas[1] Macias. The prisoner challenges his conviction and sentence by means of a petition for writ of habeas. The Court has jurisdiction over the subject matter and the parties. *See* 28 U.S.C. § 2254 (West 2006). The Director through his attorney, the Attorney General of Texas, files this response, his Respondent Dretke's Original Answer with Brief in Support, Including Response in Opposition to Motion for an Evidentiary Hearing. Except for those allegations supported by the record and those admitted herein, the Director denies every allegation of fact made by Avila. Photocopies of the state court records of Avila's appeal and state writ application have been sent to the Court.

### AVILA'S ALLEGATIONS

Avila raises the following grounds for relief:

I.     He was deprived of due process when the prosecution failed to disclosed exculpatory evidence, Pet. For Writ of Habeas Corpus by a Person in State Custody Pursuant to 28 U.S.C. § 2254 at 51-52, 56-109 (Claim (A));

---

[1] The victim's given name is sometimes spelled "Nicholas."

II.    He received ineffective assistance when trial counsel failed to discover and present exculpatory evidence, *id.* at 52 (Claim (B));

III.   He was deprived of his right to a jury and due process when the jurors failed to find beyond a reasonable doubt sufficient mitigation to entitle Avila to a life sentence, *id.* at 52 (Claim (C));

IV.    He received ineffective assistance when counsel failed to complain on appeal of the jury's failure to find sufficient mitigation, *id.* at 52 (Claim (D));

V.     He was subjected to cruel and unusual punishment because the death-penalty system provided the jurors had no means of giving effect to evidence of his good character, *id.* at 52-53 (Claim (E)).

## EXHAUSTION

Avila either has presented his claims to state court for review or is barred from now doing so. *See Nobles v. Johnson*, 127 F.3d 409, 422 (5th Cir. 1997). Because he has no additional state remedy available, Avila has exhausted his state court remedies. *See Teague v. Lane*, 489 U.S. 288, 297-98 (1989). The Director does not move to dismiss these claims for failure to exhaust those remedies.

## STATEMENT OF THE CASE

In the 41st District Court of El Paso County, Texas, in a case styled *The State of Texas v. Rigoberto Avila, Jr.,* trial cause No. 20000D01342, Avila was convicted of capital murder and sentenced to death. Tr 376-78 (judgment and sentence).[2] The conviction and sentence were affirmed on appeal, *Avila v. State,* No. 74142, 2003 WL 21513440 (Tex. Crim. App. July 2, 2003) (unpublished), and certiorari review was denied, *Avila v. Texas*, 541 U.S. 935 (2004). His application for state habeas relief was denied. *Ex parte Avila*, No. 59,662-01

---

[2] "Tr" refers to the transcript of papers filed in the trial court followed by the page number or numbers.

(Tex. Crim. App. Sept. 29, 2004) (unpublished).

## STATEMENT OF FACTS

### I.     Facts of the Crime

The facts of the offense are taken from the opinion of the Court of Criminal Appeals:

> Around 6:00 p.m. on February 29, 2000, Marcelina Macias left her home to attend a class, leaving her 19-month-old son, Nicholas [sic] Macias, and his four-year-old brother, Dylan Salinas, in [Avila's] care. At 7:02 p.m., [Avila] called "911" and told the operator that the infant boy he was babysitting had stopped breathing. When the paramedics arrived, they administered emergency treatment to the child before transporting him to the hospital. While treating the boy, paramedics found a bruise on Nicholas' stomach in the shape of a boot print. When they asked [Avila], he denied any knowledge of the marking. At the hospital, doctors determined that surgery was necessary to save Nicholas' life. However, attempts to repair the injury to Nicholas' intestines and other abdominal-related injuries were unsuccessful, and Nicholas died.

> An autopsy revealed that major organs in Nicholas' body had been split in two by considerable blunt-force trauma consistent with being stomped by an adult. Specifically, the medical examiner reported that Nicholas "died of internal bleeding due to massive abdominal trauma resulting from blunt for[ce] injury." The surgeon's testimony likened Nicholas' injuries to those caused by such events as exiting an automobile traveling at sixty miles per hour or being dropped twenty feet.

*Avila v. State*, slip op. at 2.

### II.    Punishment evidence

At the sentencing phase of trial, the State introduced evidence that after Nicolas had been injured, Avila asked Nicolas's brother, Dylan, to step on his brother, in an apparent attempt to shift the blame away from Avila and toward Dylan. 24 RR 15.[3] The State also

---

[3] "RR" refers to the reporter's record of the trial testimony, preceded with the volume number and followed by the page number.

introduced a recording of the "911" telephone call by Avila. 24 RR 25. The 911 operator

testified that during the call Avila sounded calm. 24 RR 34. A Macias family friend testified

that since the death of Nicolas, Dylan had been restless, unable to sleep, and had lost his

appetite. 24 RR 37. The mother, Marcelina Macias, frequently cried. 24 RR 38. The

defense, on the other hand, offered evidence of Avila's peaceful nature,[4] his lack of a

criminal record,[5] his good character,[6] and his reputation as a loving father.[7]

## ANSWER

A state prisoner seeking habeas corpus in federal court relief may not obtain relief on

a claim that was adjudicated on the merits in state court proceedings unless the adjudication

of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (West 2006).

A federal court may not grant the writ merely on a finding of error by a state court.

The court must find that the state court arrived at a conclusion opposite to that reached by the

---

[4] 24 RR 96, 100 (Mabel Avila, Rigoberto Avila's stepmother); 24 RR 116-17 (Gelina Garcia, an in-law).

[5] 24 RR 97 (Mabel Avila); 24 RR 120 (David Lara, friend); 24 RR 120 (Javier Parala, friend); 24 RR 125 (Jimmy Madrid, friend).

[6] 24 RR 96 (Mabel Avila); 24 RR 121 (David Lara); 24 RR 130 (Jimmy Madrid).

[7] 24 RR 98 (Mabel Avila); 24 RR 136 (Javier Parala); 24 RR 130 (Jimmy Madrid).

United States Supreme Court on a question of law or that the state court decides a case differently than that court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 413 (2000) (quoted in *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000)).

Absent a direct conflict between Supreme Court authority and the state court decision, a federal habeas court may grant relief only if it determines that the state decision is factually or legally unreasonable. *Montoya v. Johnson*, 226 F.3d at 404. An application of federal law that is incorrect or erroneous differs from one that is unreasonable. *Williams v. Taylor*, 529 U.S. at 412. An application is unreasonable if the state court identifies the correct governing legal principle from Supreme Court decisions but applies the principle to the facts of the prisoner's case unreasonably. *Williams v. Taylor*, 529 U.S. at 413.

In determining whether a state court decision involves an unreasonable application of federal law, a federal court reviews not the state court's written opinion, but the court decision only. *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).

When a federal court reviews a state prisoner's habeas petition, a "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption by clear and convincing evidence." § 2254(e)(1); *Jackson v. Johnson*, 150 F.3d 520, 524 (5th Cir. 1998).

I. **In Connection with His Claim That the Prosecutors Withheld Exculpatory Evidence, Avila Fails to Show That He Is Entitled to Relief.**

Avila alleges he was deprived of due process when the prosecution failed to disclose exculpatory evidence. Pet. at 51-52, 56-109. Avila alleges that a State medical expert, Dr. Harry Wilson, was of the opinion that the injuries of the victim, Nicolas, had been caused not by multiple blows, but by a single blow. *Id.* at 60. Avila alleges that the prosecution

withheld from the defense Dr. Wilson's single-blow opinion. *Id.* at 61-62. Avila alleges that the single-blow opinion was favorable to the defense because the opinion suggested that Avila acted by accident or from momentary anger. *Id.* at 61, 101-02.

The State consulted with Dr. Wilson before trial. Tr 60. At trial, though, the El Paso county medical examiner, Dr. Juan Contin, testified for the State. 20 RR 24-63. Dr. Contin said that Nicolas had been killed by a "blunt force injury, a crushing injury," which had cause a detachment of the duodenum from the spine, and the cutting of the child's pancreas in two. 20 RR 30-31.

When Avila presented this claim in state postconviction proceedings, *Ex parte Avila* at 16-25, he offered an affidavit from Dr. Wilson, *id.* at 84-88. In that affidavit, Dr. Wilson said that in his opinion, the injuries suffered by Nicolas were "consistent with and probably caused by a single violent blow to the child's abdomen." *Id.* at 84. Dr. Wilson said he reached his opinion after considering the evidence, including his own examination of the organs and tissues removed from the victim's body, the autopsy performed by the El Paso County medical examiner, and photographs taken in connection with the autopsy. *Id.* He believed that the multiple injuries to the victim's abdomen were "probably the result of a single violent blow to his anterior abdominal wall." *Id.* "Of course," Dr. Wilson said, "I cannot say with certainty that multiple blows did not occur." *Id.* He said, "The lack of a deep injury to the back and side external bruising sites strongly suggests that a single violent force applied broadly to the anterior abdominal wall created the multiple deep shearing and compressive injuries throughout the abdomen in a pattern consistent with the surface area of an adult shoe." *Id.* at 84-85.

"The lethal blunt force trauma," Dr. Wilson said, "could have been caused by a person stomping on the child's abdomen or violently striking the child's abdomen with a

-6-

blunt object as he lay supine on the floor." *Id.* at 85.  He said that it was "likely" the injuries were caused by a single blow. *Id.*

Dr. Wilson said that before trial he met at least three times with prosecutors Rick Locke and Gerald Cichon. *Id.* at 84.  He said that the prosecutors "did not seem to greet my opinion with great interest." *Id.* at 85.  He said that although the prosecutors told him that he would be called to testify, he was not. *Id.*  He also was not contacted by the defense. *Id.*

He said:

> When I discovered that a major issue for [Avila's] culpability in this case was the alleged number of blows inflicted upon [the victim] by [Avila], I wondered whether there might have been some hesitancy on the part of the prosecuting attorneys to use me as an expert because perhaps my testimony did not support their theory of the case.

*Id.* at 85-86.  Dr. Wilson said that after trial he contacted assistant district attorney Penny Hamilton to tell her of his concerns. *Id.* at 86.  She said that she would relay his concerns to District Attorney Jaime Esparza. *Id.*

In its response, the State offered affidavits from prosecutors Locke and Cichon. *Id.* In his affidavit, Locke said that on about three occasions, he, Cichon, and investigator Ed Porterfield met with Dr. Wilson. *Ex parte Avila* at 166.  Locke said that at the time of the first meeting, the prosecution team had no idea of Dr. Wilson's opinion regarding the victim's injuries. *Id.*  He said that it was Dr. Wilson himself who first told the prosecution that, in Dr. Wilson's opinion, the victim's injuries were caused not by a single blow but by multiple blows. *Id.*  Locke said that to his knowledge Dr. Wilson first expressed his single-blow opinion after trial only. *Id.*  Locke said, "Dr. Wilson never disclosed that opinion to myself or any member of the prosecution team during the trial of the case." *Id.*

-7-

The affidavit of Cichon resembled that of Locke. *Id.* at 169-70. Cichon added, however, that during the punishment phase of trial, Cichon contacted Dr. Wilson, who told Cichon that he, Dr. Wilson, "did not disagree" that Nicolas could have sustained multiple blows at or about the time of death. *Id.* at 169. Cichon noted also that Dr. Wilson's surgical report, which the doctor mentions in his affidavit, was made available to the defense during trial. *Id.* at 169-70.

Also attached to the State's response is an affidavit from prosecutor Penny Hamilton. *Id.* at 172. In her affidavit, she said that Dr. Wilson contacted her about the Avila case after trial only. *Id.* She said that he never told her of his single-blow opinion until after trial. *Id.* She said also that to her knowledge Wilson never disclosed the single-blow opinion to anyone until after trial. *Id.*

The State included an affidavit from the defense expert, Dr. Rodriguez. *Id.* at 174. Dr. Rodriguez said that when he performed a second autopsy, Dr. Wilson was present. *Id.* Dr. Rodriguez said that at that time Dr. Wilson told him that he held the opinion that the injuries could have been caused either by multiple blows or by a single blow. *Id.*

In its findings and conclusions, the state court determined that before and during the trial, the State was not aware of Dr. Wilson's single-blow opinion. *Id.* at 219, para. 4. Because the State was not aware of the opinion, the State did not fail to disclose that opinion to Avila. *Id.*, para. 5. Further, the court said, the defense knew of Dr. Wilson's opinion because at the second autopsy, performed by the defense expert, Dr. Rodriguez, Dr. Wilson discussed his single-blow opinion with Dr. Rodriguez. *Id.*, para. 8.

Also, the court said, Dr. Rodriguez testified that the victim's injuries could have been caused by a single blow. *Id.*, para. 9.

-8-

The court noted also that the defense was apprised of Dr. Wilson's single-blow opinion from Dr. Wilson's surgical report. *Id.* at 218-19, para. 10. The defense had access to Dr. Wilson's surgical report before trial, and the report was used by the defense expert, Dr. Rodriguez. *Id.*

Before this Court, Avila offered an additional affidavit from Dr. Wilson. Pet.; App'x A. In that second affidavit, Dr. Wilson said that he first became involved in the case shortly after the victim's death. App'x A at 2. Dr. Wilson said that after Nicolas's death, he examined the organs and tissues that had been removed during the operation during which Dr. Raschbaum tried to save the victim's life. *Id.* Dr. Wilson said that after examining the tissues and organs, he prepared slides and wrote a surgical pathology report. *Id.* His purpose in writing the report was not to determine the cause or manner of death but to document and describe the surgical specimens. *Id.* He said he reached no opinion and made no suggestion about how the injuries were sustained. *Id.* He said he never performed an autopsy.

Dr. Wilson said that later he was asked by the El Paso District Attorney's office to observe, "as their representative," the autopsy performed by Dr. Rodriguez. *Id.* at 3. Dr. Wilson said that both he and Dr. Rodriguez knew of each other's roles, and, "therefore did not discuss any questions which might later arise in the case concerning Mr. Avila's culpability or the specific circumstances of death." *Id.* Dr. Wilson said that he and Dr. Rodriguez did "talk with one another a little." *Id.*

Dr. Wilson said, "As it became apparent that the boy's injuries were extensive, we observed based upon our review to that point, that it would be difficult to determine whether the injuries had been caused by a single or by multiple traumatic events." *Id.*

Referring to Dr. Rodriguez's affidavit offered by the prosecutors in state habeas proceedings, Dr. Wilson said that his statements to Dr. Rodriguez (presumably referring to

those statements made during the second autopsy) were intended only to express uncertainty about how the victim's injuries were sustained. *Id.* Dr. Wilson said that it was clear (presumably at the time of the second autopsy) that, given the extent of the injuries, the circumstances of death would be difficult to determine. *Id.* He said that before he could reach any reliable opinion, "considerable further investigation would be necessary." *Id.*

Dr. Wilson said that the prosecutors asked for his assistance some time later. *Id.* at 3-4. Dr. Wilson said that the prosecutors "made it clear" that they wanted him to investigate and examine the autopsy records, other medical records, and the tissue samples to determine the circumstances of death. *Id.* at 4.

Dr. Wilson said he studied the case over a period of months and met with the prosecutors to report his progress. *Id.* He said that he eventually reached the conclusion that the injuries were caused by a "single violent blow to the abdomen." *Id.* He said that because the condition of the body suggested the presence of multiple external wounds, not all of which were specifically associated with deeper injury, and because the internal damage to the boy's organs and tissues was so widespread, he had difficulty at first explaining how these various injuries could logically be the consequence of a single traumatic event. *Id.* "Eventually, after considerable investigation," he said, "it became clear to me how these multiple injuries could be explained by a single blow." *Id.* at 4-5.

He said:

In one of my last meetings with the prosecuting attorneys, I revealed my conclusions to them, explaining in detail the nature of the child's injuries and illustrating my thought process with one of the diagrams I had prepared, a copy of which I gave to the prosecutors for their future reference.

*Id.* at 5. He said that he was surprised by the lack of enthusiasm shown by the prosecutors for his findings. *Id.* Still, he said, the prosecutors told Dr. Wilson that he would be called

as a witness. *Id.* Wilson said he never was called to testify. *Id.*

Wilson said that he later learned that instead of producing evidence corroborating Avila's pretrial statement, in which he said he struck a single blow, the prosecutors presented evidence and argued to the jury that Avila "kicked and stomped" Nicolas "repeatedly." *Id.* at 5-6. Wilson said that had he testified, he would have given his opinion that the victim's death "probably resulted from a single blow." *Id.*

He said he reached his conclusion "long after" he was first approached by the prosecutors. *Id.* Dr. Wilson also said that his comments to Dr. Rodriguez during the second autopsy could not be "reasonably understood as an expression" of his opinion on the subject. *Id.*

Dr. Wilson said that because he reached his conclusion only after much investigation and deliberation, neither defense counsel nor Dr. Rodriguez could have known of his opinion. *Id.* at 6-7. "Neither did I discuss my conclusion in any detail with Dr. Rodriguez before trial," he said. "The only persons whom I specifically informed of my findings prior to Mr. Avila's trial, conviction and sentence of death were the prosecuting attorneys with whom I had been consulting." *Id.* at 7.

In the second affidavit, Dr. Wilson recounted again his conversation with assistant district attorney Penny Hamilton. He said that he did not recall if he spoke with the El Paso County District Attorney Esparza directly. *Id.*

Also attached to Avila's petition is a second affidavit from Dr. Rodriguez. Pet.; App'x B. In that second affidavit, Dr. Rodriguez repeated his statement that during the second autopsy, Dr. Wilson had commented that the injuries suffered by the victim could have been caused either by multiple blows or by a single blow. App'x B at 2. Rodriguez said:

> I do not specifically remember the conversational context in which this
> comment was made, but I understood it to mean that Dr. Wilson did not, at that
> time, have an opinion whether such injuries were caused by a single blow or
> by multiple blows. I did not understand Dr. Wilson's comment to mean that
> he then had a more specific opinion regarding the nature of that source or the
> circumstances under which the injuries were inflicted.

*Id.* at 2. In that second affidavit, Dr. Rodriguez said that in his previous affidavit he "did not

state or imply" that he had told the defense team that Dr. Wilson was of the opinion that the

injuries were caused by a single blow. *Id.* Dr. Rodriguez said that he did not understand Dr.

Wilson to have such an opinion. He said that he did not discuss with anyone Dr. Wilson's

single-blow opinion until after trial. *Id.*

Dr. Rodriguez said that before trial he knew that Dr. Wilson was studying in detail the

autopsy report and the associated records. *Id.* at 4. Dr. Rodriguez said he was "somewhat

surprised" the defense did not request a similar investigation. *Id.* Indeed, he said, he was not

aware of the defense strategy. "Particularly," he said, "I did know until I was called as a

witness that the cause would involve a controversy between the prosecution and the defense

about whether the injuries to Nicolas Macias were caused by a single or by multiple blows."

*Id.*

He said his trial testimony regarding the manner of death was "uncertain." *Id.* at 5.

> In particular, I was unable to reach a firm conclusion whether the injuries
> sustained by the child were probably the result of a single blow. Accordingly,
> the best I was able to do at trial as a member of the defense team was to
> express the view that such injuries "could be explained by just only one event
> of trauma," but that they might just as well have been caused by multiple
> blows. I was thus unable to express any disagreement with the conclusion of
> the medical examiner [Dr. Contin] that multiple blows were . . . likely
> sustained by the child at the time of the deadly assault on him.

*Id.* at 5. Dr. Rodriguez said that later he learned that Dr. Wilson was of the opinion that the

death had been caused by a single blow. *Id.* He said that he cannot say whether, had he

studied the data more, he would have reached a similar conclusion. *Id.* Dr. Rodriguez said, however, that "there is substantial support for Dr. Wilson's conclusion regarding the manner of death." *Id.*

### A.   The evidence presented to this Court has never been reviewed by the state court; hence, the evidence is defaulted.

The affidavits presented to this Court that were not presented to the state court are defaulted. A federal habeas petitioner may not obtain relief unless it appears that he has exhausted the remedies available in state court. *See* § 2254(b) (West 2006). He must give the state courts the opportunity to address and if necessary correct alleged deprivations of constitutional rights. *Castille v. Peoples*, 489 U.S. 346, 349 (1989). To exhaust his claim, he must apprise the state court of the theory and facts upon which he bases his federal assertion. *Picard v. Conner*, 404 U.S. 270, 276 (1971). Where he makes the same claim to a federal court that he presented to the state courts but supports that claim with factual allegations that he did not make to the state courts, the petitioner has failed to exhaust his remedies. *Rodriguez v. McKaskle*, 724 F.2d 463, 466 (5th Cir. 1984).

Where a state prisoner seeks federal relief on a claim that has not been presented to state courts and where the state court to which he would be required to present his claims would now find the claim barred, federal habeas corpus review is precluded. *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Nobles v. Johnson*, 127 F.3d at 423.

A petitioner fails to exhaust his state remedies when he presents material evidence to the federal court that was not presented to the state court. *Graham v. Johnson*, 94 F.3d 958, 968 (5th Cir. 1996); *Knox v. Butler*, 884 F.2d 849, 852 n.7 (5th Cir. 1989) ("[F]ederal courts must respect the autonomy of state courts by requiring that petitioners advance in state court all grounds for relief, as well as all factual allegations supporting those grounds. This rule

-13-

extends to the evidence establishing the factual allegations themselves.").

Not one of the affidavits offered to this Court has been presented to the state court for review. Dr. Wilson's second affidavit (Pet.; App'x A) duplicates his first (*Ex parte Avila* at 84-88). To the extent that Dr. Wilson offers new evidence or tries to controvert the statements of Locke and Cichon, he could have offered such evidence and made such allegations in his first affidavit (*Ex parte Avila* at 84-88). Dr. Rodriguez's affidavit offered to this Court (Pet.; App'x B) also repeats his testimony from his first (*Ex parte Avila* at 174). To the extent that Dr. Rodriguez tries to clarify his description of Dr. Wilson's statements from the second autopsy, Dr. Rodriguez gives no new information but rather gives his impression of the context of Dr. Wilson's statement. In connection with Dr. Wilson's statements during the second autopsy, Dr. Rodriguez is competent to testify only about what Dr. Wilson said. Dr. Rodriguez's impressions about the context are not relevant.

The affidavits from El Paso Assistant District Attorney John Davis, from investigator Jerry Mitchel, and from El Paso Public Defender Scott Segall also were not presented to the state court and are, hence, defaulted. To the extent that Avila presents the affidavits in an attempt to allege infirmities in the state habeas corpus proceedings, such a complaint is not cognizable on federal habeas review. *See Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999).

**B.    Were Avila's complaints reviewed on the merits, he still would not be entitled to relief.**

Were Avila's complaint to be reviewed on the merits, he still would not be entitled to relief. Irrespective of the good faith or bad faith of the prosecution, where evidence is material either to guilt or punishment, the suppression by the prosecution of evidence favorable to an accused after a request violates due process. *Brady v. Maryland,* 373 U.S.

83, 87 (1963). To establish such a violation, the petitioner must prove (1) the prosecutor suppressed or withheld evidence (2) that was favorable and (3) material to the defense. *Moore v. Illinois,* 408 U.S. 786, 794-95 (1972).

### 1. The single-blow theory was not helpful to the defense.

#### a. Because Avila's defense was based upon innocence, a single-blow theory was inculpatory.

Were it assumed that the prosecutors withheld from the defense Dr. Wilson's single-blow opinion, Avila cannot show that the opinion was favorable to the defense. *See id.* The suppression by the prosecution of evidence that is favorable to the defense violates due process only where that evidence is material either to guilt or to punishment, *see Brady v. Maryland,* 373 U.S. at 87, or might have been used by the defense to impeach a prosecution witness by showing bias or interest, *see United States v. Bagley,* 473 U.S. 667, 676 (1985) (citing *Giglio v. United States,* 405 U.S. 150, 154 (1972)).

Avila alleges that Dr. Wilson's opinion was exculpatory because the opinion supported a defense based upon an accident or a fit of temper; that is, Avila killed Nicolas but did so by accident or by a momentary loss of control. Pet. at 107. Avila's argument fails. The defense at guilt-innocence was based not upon Avila's having killed Nicolas by accident or in a fit of temper but upon Avila's not having killed Nicolas at all. Indeed, Avila told the jury that he did not kill Nicolas. 22 RR 116-17. He said that he was baby-sitting for Nicolas and Dylan and that the children were in another room while he was watching television in the living room. 22 RR 116. He said that Dylan came into the living room and told him that Nicolas had stopped breathing. 22 RR 116. Avila said he went back to the bedroom and found Nicolas on the floor and called 911. 22 RR 116-17. Further, at closing, the defense argued that (1) the marks on the body of Nicolas did not match the shoes of Avila, 21 RR 91

-15-

ll. 8-18, 23 RR 60 ll. 19-24; (2) Avila had no motive for killing Nicolas, 23 RR 59 ll. 13-16;

(3) Avila had no criminal record, 23 RR 60 ll. 10-18; (4) the injuries on Nicolas's body were

not caused during that period when Avila had sole access to the child, 23 RR 65 ll. 16-20;

(5) a more likely killer was the mother, 23 RR 60 ll. 24-25 through 61 ll. 1-5, 63 ll. 19-22;

(6) Dylan was too young to be a reliable witness, 23 RR 67 ll. 4-25 through 68 ll. 1-4; and

(7) Avila's pretrial statements had been fabricated by police, 23 RR 69 ll. 3-25 through 70

ll. 1-4.

Dr. Wilson's opinion is exculpatory only if the defense's theory is that Avila killed

Nicolas but did so without the required knowledge or intent but in a fit of rage or by accident.

Where the defense is based upon the mother's having committed the crime, the single-blow

theory becomes not exculpatory but inculpatory. Indeed, the State argued that only Avila had

the strength to cause the injuries. 23 RR 76 ll. 10-14 ("Who is the only person that could

generate that much force? Take a look at him. He's a big guy. He can generate that much

force. He can do it. He's the only one."). Evidence that Nicolas received several blows over

a period of time, perhaps days, allowed the defense to suggest that the injuries had been

caused by the mother, who may have had less physical strength than Avila. Where the

damage was caused by a single blow, Avila, not the mother, became the more likely killer.

By arguing that the single-blow theory is exculpatory, Avila attempts to change the theory

of the case.

> **b.** **Dr. Wilson's opinion did not help the defense because the doctor could not exclude the multiple-blow theory.**

Were it assumed that a single-blow opinion was exculpatory, Dr. Wilson's opinion

supports that theory only if the theory excludes multiple blows. Dr. Wilson, however, could

not exclude the possibility that the injuries had been caused by multiple blows. *Ex parte*

*Avila* at 84 ("Of course, I cannot say with certainty that multiple blows did not occur."). Had Dr. Wilson been called to testify for the defense, he could have offered an opinion that Nicolas was killed by a single blow but that the State's multiple-blow theory could not be excluded. Wilson's opinion would have been helpful to the defense only if the opinion excluded multiple blows. Where a single blow is an option along with multiple blows, the State could rely upon and argue to the jury its multiple-blow theory.

<div style="text-align:center">

**c.   Dr. Wilson's single-blow theory did not disprove the required *mens rea*, namely, intent or knowledge.**

</div>

Further, Avila argues that a single-blow theory negates the required *mens rea* at guilt-innocence; that is, his striking a single blow shows that his actions were the result of momentary anger or accident.

The State had to prove that Avila acted with the required *mens rea*, namely, intent or knowledge. *See* TEX. PEN. CODE § 19.02(b)(1) (West 2006). A person acts with intent when it is his conscious desire to cause the result, here, Nicolas's death. *See* TEX. PEN. CODE § 6.03(a) (West 2006). A person acts with knowledge when he is aware that his conduct is reasonably certain to cause the result, that is, the death. *See* Sec. 6.03(b). Multiple blows, however, may suggest less culpability than that suggested by a single blow. Where, for example, a person strikes an infant multiple times using lesser force such that only the cumulative blows prove fatal, the defense could argue that the multiple blows show less deadly intent or knowledge. It could argue that the person striking multiple blows was unaware of the cumulative damage being done by lesser blows. On the other hand, the person who kills with a single blow would be more likely to know that his single blow, delivered with great force, would prove fatal.

<div style="text-align:center">-17-</div>

     **d.**    **At sentencing, proof that Avila killed with a single blow showed him to be not a lesser but a greater danger.**

Neither was the single-blow opinion of Dr. Wilson favorable for the defense at punishment. Although Avila argues that his striking a single blow shows that his actions were the result of accident or momentary anger and shows that he is not likely to reoffend, his ability to kill an infant with a single blow could show that he is not a lesser danger but a greater danger. *See* TEX. CODE CRIM. PROC. art. 37.071, § 2(b)(1) (West 2006). Put another way, a person who must strike multiple blows to kill arguably constitutes a lesser danger than a person who can kill with a single blow.

To the extent that Avila argues that the defense should have changed its defensive strategy to accommodate Dr. Wilson's single-blow opinion, the issue will be discussed in connection with Avila's ineffective-assistance claim in Section II., *infra*.

    **2.**    **The prosecutors did not withhold the evidence.**

     **a.**    **Where the state court found the prosecutors' affidavits credible, that choice is entitled to deference.**

Even if it is assumed that Dr. Wilson's single-blow opinion was exculpatory, Avila does not show that the opinion was withheld. When Avila presented this issue to the state court, the court determined that the prosecution did not withhold evidence because the prosecutors were not aware of the evidence. *Ex parte Avila* at 218, para. 5. The court also said that because Avila presented evidence that Nicolas died from a single blow, Avila showed no *Brady* violation. *Id.* at 222, para. 28. Avila also failed to show, the court said, that had the prosecutors disclosed Dr. Wilson's single-blow opinion, it was reasonably probable that the outcome of the trial would have been different. *Id.*, para. 29.

The factual findings of the state court are entitled to the presumption of correctness. *See* § 2254(e); *Jackson v. Johnson*, 150 F.3d at 524. The presumption applies not only to explicit findings but also to implicit findings, including credibility choices. *See Marshall v. Lonberger*, 459 U.S. 422, 435 (1983). The presumption arises not have the state court has accorded a full and fair hearing but after the state court has adjudicated the issue on the merits. *See Valdez v. Cockrell*, 274 F.3d 941, 946-47 (5th Cir. 2001). Unless the findings are not "fairly supported by the record," a federal court may not overturn the state court's determination. *Demosthenes v. Baal*, 495 U.S. 731, 735 (1990). A federal court may not disregard the credibility choice of the state court simply because the federal court disagrees with the choice. *See Guidry v. Dretke*, 397 F.3d 306, 325 (5th Cir. 2005).

The state court has determined, at least implicitly, that the affidavits of the prosecutors are credible. This finding is supported by the record, *see Demosthenes v. Baal*, 495 U.S. at 735, and is entitled to the presumption of correctness. *See* § 2254(e); *Jackson v. Johnson*, 150 F.3d at 524. It matters not that the state court failed to hold a live hearing. *See Valdez v. Cockrell*, 274 F.3d at 946-47. Indeed, it is not clear that the evidence – Dr. Wilson's opinion – existed in the run-up to trial. Prosecutors Locke and Cichon testified that before trial Wilson did not tell them of his single-blow opinion. *Ex parte Avila* at 166 (Locke), at 169 (Cichon). Both testified that Dr. Wilson himself first told them that Nicolas died from multiple blows. *Id.* at 166, 169. To the extent that the affidavits of the prosecutors and Dr. Wilson controvert each other, the state court was entitled to make a credibility choice. This Court may not disregard that choice simply because it may disagree with it. *See Guidry v. Dretke*, 397 F.3d at 325. The state court could have determined that the prosecutors' affidavits were credible, and that the affidavit of Dr. Wilson was not credible, was equivocal, or was unclear. Avila failed to rebut the presumption with clear and convincing evidence.

-19-

*See* § 2254(e); *Jackson v. Johnson*, 150 F.3d at 524.  He offers only additional affidavits presenting the same testimony that the state court rejected.

<div style="text-align:center">

**b.    Dr. Wilson's affidavit does not controvert that of prosecutors necessarily.**

</div>

Second, even if the affidavits of Dr. Wilson are taken at face value, his statements do not controvert the statements of the prosecutors necessarily.  In his state affidavit, Dr. Wilson recounts his single-blow opinion.  *Ex parte Avila* at 84-88.  He does not, however, recount precisely when he relayed his opinion to the prosecutors.  Had the doctor reached his single-blow opinion and had he failed to relay that opinion to the prosecutors, the prosecutors could not reasonably said to be aware of the opinion.

Also, while Wilson said he told the prosecutors of his opinion before trial, the doctor does not state specifically what he told the prosecutors.  Hence, it is possible that the doctor told the prosecutors of his investigation and his findings but never told the prosecutors, "In my opinion, Nicolas was killed by a single blow only.  The evidence does not show that Nicolas received multiple blows."

Indeed, his own affidavits reveal that Dr. Wilson is optimistic in his estimation of the ability of laymen to draw medical conclusions from medical data.  In his state affidavit Wilson said that in his original surgical report he determined that Nicolas's injuries were "due to a combination of direct impact-related sheering and compression, as well as to a diffuse 'ischemic' injury from extensive interference with normal organ and tissue blood supply to many site."  Dr. Wilson said in that affidavit, "In other words, I believed then, as I do now, that the multiple injuries to this child's abdomen were *probably the result of a single violent blow* to his anterior abdominal wall."  (Italics added).  Hence, Dr. Wilson suggests his original surgical report revealed his single-blow opinion.  Although Dr. Wilson's

<div style="text-align:center">-20-</div>

surgical report may, to a pathologist, suggest that Nicolas died from a single blow, the report does not necessarily suggest that conclusion to a layman. Indeed, Avila argues to this Court that the single-blow opinion cannot be gleaned from the surgical report. Pet. at 69-70. Where Wilson did not relay his opinion to the prosecutors in language clear enough for the prosecutors to understand the import, the prosecutors cannot be said to have withheld the evidence.

### c.   The defense could have discovered Dr. Wilson's single-blow opinion through reasonable diligence.

Even if it is assumed that the prosecutors knew of Dr. Wilson's opinion, Avila does not show that exculpatory evidence was withheld. To show that evidence has been withheld, the petitioner must show that the evidence was not discoverable through due diligence. *See Kutzner v. Cockrell*, 303 F.3d 333, 336 (5th Cir. 2002) (citing *Brady v. Maryland*, 373 U.S. at 87; *Rector v. Johnson*, 120 F.3d 551, 558 (5th Cir. 1997)). The State need not furnish a defendant with exculpatory evidence that is available to the defendant through the exercise of reasonable diligence. *See id.* (citing *Rector v. Johnson*, 120 F.3d at 558). When evidence is available to both the defense and the prosecution and where the defense fails to conduct a diligent investigation, the defendant bears the onus. *See id.* (citing *Herrera v. Collins*, 954 F.2d 1029, 1032 (5th Cir. 1992)).

Further, where the State and the defense have access to the same data, where the State's expert after reviewing the data reaches a conclusion favorable to the defense, and where the State does not disclose that opinion to the defense, so long as the defense expert had access to the data and had the opportunity to reach the same opinion, for *Brady* purposes the State cannot be said to have withheld evidence. *See Pippin v. Dretke*, No. 05-70007, 2005 WL 3543708, at *5 (5th Cir. Dec. 28, 2005) (stating that where State and defense

-21-

experts had access to same data and where State's expert reached opinion that arguably was favorable to the defense, so long as defense expert had opportunity to reach the same opinion, prosecution cannot be said to have withheld evidence).

Hence, even if it is presumed that the prosecutors knew of Dr. Wilson's opinion and that they failed to disclose that opinion, the prosecutors nonetheless cannot be said to have withheld evidence. *See id.* The data were available to Dr. Rodriguez, who was free to comb that data for his own single-blow theory. Avila's complaint is not that the State withheld Dr. Wilson's opinion but a complaint that his own expert did not present the same opinion. To the extent that Avila complains that he received the wrong expert, although Avila was entitled to an expert, he was not entitled to a particular expert. *See Ake v. Oklahoma*, 470 U.S. 68, 83 (1985) (stating that indigent defendant does not have a "constitutional right to choose [an expert] of his personal liking or to receive funds to hire his own").

Further, to the extent that during the second autopsy Dr. Wilson relayed to Dr. Rodriguez his single-blow suspicions, the defense team knew of Dr. Wilson's suspicions and was free to pursue that lead before trial. *See Kutzner v. Cockrell*, 303 F.3d at 336.

### 3. Even if the opinion had been withheld and was favorable, the opinion was not material.

Even if it is assumed that Dr. Wilson's opinion was exculpatory and was withheld by the prosecutors, Avila does not show that the opinion was material. *See Moore v. Illinois,* 408 U.S. at 794-95.

Evidence is material only if there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. *United States v. Bagley,* 473 U.S. at 684. A probability is "reasonable" where it is sufficient to undermine confidence in the outcome of the trial. *Id.* at 678, 684. When the evidence is merely

cumulative of other evidence in the record, no violation occurs. *See United States v. Sipe*, 388 F.3d 471, 478 (5th Cir. 2004) (citing *Spence v. Johnson*, 80 F.3d 989, 995 (5th Cir. 1996)). Whether the evidence is material under *Brady* is a mixed question of law and fact, *see Trevino v. Johnson*, 168 F.3d at 184, which is reviewed using the unreasonable-application standard. *See* § 2254(d)(1).

Avila complains not that the State withheld data but that the State withheld Dr. Wilson's opinion. *See* FED. R. EVID. 702; TEX. R. EVID. 702. Dr. Wilson's opinion, however, duplicated the opinion of the defense expert, Dr. Rodriguez. Avila cites no clearly established federal law, *see* § 2254(d)(1), suggesting that he is entitled to a particular expert to present his defense.

To the extent that Avila alleges that Dr. Rodriguez failed to present a single-blow theory, Avila's complaint is not with the State but with his own expert. Had Avila wished to present the theory through more than one expert or through a different expert he could have done so. Avila cites nothing, however, suggesting that he has a constitutional right to present the theory through multiple experts or through a particular expert. *See* § 2254(d)(1); *see also Ake v. Oklahoma*, 470 U.S. at 83.

Nor can Avila show that had the opinion been disclosed, there is a reasonable probability that the result of the proceeding would have been different. *See United States v. Bagley*, 473 U.S. at 684. Had Dr. Wilson testified and had he told the jurors of his opinion, his testimony would have duplicated that of Dr. Rodriguez. The State still could have relied upon its multiple-blow theory supported by the opinion of the county coroner, Dr. Contin. The remainder of the evidence would have been unchanged. Despite Avila's otherwise clean criminal record, the jurors assessed a death penalty. They likely were persuaded by the violence of the attack, the helplessness of the victim, and Avila's attempt to shift the blame

to Dylan. 24 RR 15. Whether Avila delivered one, two, or three blows was not determinative.

## II. Avila Did Not Receive Ineffective Assistance When Counsel Failed to Discover and Present Dr. Wilson's Opinion.

Avila alleges that he received ineffective assistance at the guilt-innocence and punishment phases of trial when counsel failed to investigate, discover, and present Dr. Wilson's opinion. Pet. at 110-27.

When Avila presented this claim to the state court, the court determined that Avila knew of Dr. Wilson's opinion through the discussion between Drs. Wilson and Rodriguez. *Ex parte Avila* at 218, para. 8. The court determined that Avila knew of the opinion because at trial Dr. Rodriguez tendered a single-blow opinion and because before trial, Dr. Wilson's surgical report had been disclosed. *Id.*, paras. 9 & 10. The court said that because Avila used Dr. Rodriguez's single-blow opinion at trial, Avila failed to show that the performance of counsel was deficient or that any presumed deficiency prejudiced his cause. *Id.* at 222, para. 30. Specifically, the court said, counsel's performance could not be deficient for failing to offer the single-blow opinion of Dr. Wilson because Dr. Rodriguez offered a single-blow opinion. *Id.*, para. 31. Second, the court said, because the single-blow opinion was delivered by another expert, Avila cannot show a reasonable probability that had Dr. Wilson delivered the same or similar opinion the result of the trial would have been different. *Id.*, para. 32.

### A. At the guilt-innocence phase of trial, Avila failed to show that he received ineffective assistance of counsel.

A petitioner who wishes to show ineffective assistance of counsel must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To show deficient performance, the petitioner must show that counsel's representation fell below an objective

-24-

standard of reasonableness. *Id.* at 687-88. In reviewing the performance of counsel, courts must be "highly deferential" to counsel's conduct. *Id.* at 689. A court must presume that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 690. The petitioner must rebut the presumption that under the circumstances the challenged action might be considered sound trial strategy. *See id.* In fact, a "conscious and informed decision on trial tactics and strategy" will not support an ineffective-assistance complaint unless the decision is "so ill chosen that it permeates the entire trial with obvious unfairness." *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983).

A court need not consider the deficiency prong if it concludes that the petitioner has shown no prejudice. *Strickland v. Washington*, 466 U.S. at 697. The petitioner may not simply allege, but must prove prejudice "affirmatively." *Id.* at 693. To show prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. A probability is reasonable where it is sufficient to undermine confidence in the outcome. *Id.* The petitioner bears the burden of proof. *Martin v. Maggio*, 711 F.2d 1273, 1279 (5th Cir. 1983). Because the issue of ineffective assistance is a mixed question of law and fact, *see Strickland v. Washington*, 466 U.S. at 698, it is reviewed using the "unreasonable application" standard. *See* § 2254(d)(1); *Nobles v. Johnson*, 127 F.3d at 416.

### 1. Counsel knew or should have known of Dr. Wilson's opinion; his decision not to call Dr. Wilson was sound.

The finding by the state court that trial counsel knew or should have learned of Dr. Wilson's theory from Dr. Rodriguez, *Ex parte Avila* at 218, paras. 9 & 10, is supported by the record, *id.* at 174 (Rodriguez affidavit); *see Demosthenes v. Baal*, 495 U.S. at 735, and is entitled to the presumption of correctness. *See* § 2254(e); *Jackson v. Johnson*, 150 F.3d

-25-

at 524. Because counsel knew of Dr. Wilson's opinion and knew also of Dr. Rodriguez's opinion, counsel's decision not to rely upon the single-blow defense was based not upon a failure to investigate but upon sound trial strategy. *See Strickland v. Washington*, 466 U.S. at 690. As mentioned in Section I.B.1.a., *supra*, counsel created a defense based not upon Avila's having killed Nicolas in anger or by accident but based upon Avila's not having killed Nicolas at all. Avila does not challenge counsel's trial strategy. He alleges only that counsel was ineffective for failing to discover and present Dr. Wilson's opinion. Pet. at 110. Because Avila does not challenge defense counsel's trial strategy, Avila's allegations even taken as true do not describe counsel performance that is objectively unreasonable. *See Strickland v. Washington*, 466 U.S. at 690. Indeed, where counsel was relying upon an actual innocence defense, counsel's avoidance of Dr. Wilson's opinion was sound. *See id.*

To the extent that Avila challenges the defensive strategy, Avila also fails to show that the actions of counsel were unreasonable. *See id.* The reasonableness of counsel's actions may be determined or influenced by the petitioner's own actions. *See id.* Counsel's actions are usually based on counsel strategy and information supplied by the petitioner. *Id.* Such information determines what investigative decisions are reasonable. *Id.* For example, when the support for a defense has been supplied by the petitioner himself, the need for additional investigation may be diminished or eliminated. *Id.* Also, when the petitioner gives counsel reason to believe that pursuing a certain investigation would be fruitless or harmful, the petitioner may not later challenge as unreasonable counsel's failure to pursue those investigations. *Id.* Inquiry into counsel's conversations with the petitioner are important to a proper assessment of counsel's investigative decisions. *Id.*

It may reasonably be assumed that Avila's trial testimony corresponds to the tale he told counsel before trial. Specifically, it is reasonable to assume Avila told counsel not that

-26-

he killed Nicolas in a fit of anger but that he did not kill Nicolas at all.[8] Based upon such a narrative, counsel was reasonable to pursue a strategy based not upon anger but upon innocence. Indeed, where the client asserts innocence, counsel could perform deficiently by disregarding the client's assertions and basing a defense upon anger or accident. Avila fails to show that the decision of counsel to pursue a strategy based upon innocence fell below an objective standard of reasonableness. *See Strickland v. Washington*, 466 U.S. at 690.

As for the reasonableness of counsel strategy at the sentencing phase, again, counsel did not pursue a strategy based upon an accidental slaying or a slaying in anger. Counsel pursued a mitigating case based upon the lack of future dangerousness, 23 RR 37, Avila's clean record, 23 RR 37, and his good character, 23 RR 42-44. Changing trial strategy at sentencing to one based upon anger or accident would have been problematic. First, such a strategy would have seemed disingenuous, as if Avila were telling the jurors, "I said before I didn't do it, but now I'm saying it was an accident." For counsel to base a sentencing strategy upon anger or accident would suggest to the jurors that Avila had committed perjury. Hence, a sentencing strategy based upon lack of future dangerousness and good character must be presumed sound. *See Strickland v. Washington*, 466 U.S. at 690. Avila fails to rebut that presumption. *See id.*

---

[8] *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 3.03 & cmts. 9-12, *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G App. A (West 2006) (TEX. STATE BAR R. art. X, § 9) (where client intends to offer perjured testimony, "the lawyer must take reasonable remedial measure which may include revealing the client's perjury."); *see also generally Maddox v. State*, 613 S.W.2d 275, 279-84 (Tex. Crim. App. 1981) (discussing alternatives for defense counsel where counsel knows that client intends to commit perjury).

## 2.   Avila fails to show that had counsel presented Dr. Wilson's opinion, the result of the proceedings would have been different.

Even if the deficient performance of counsel is assumed, Avila cannot show prejudice. *See Strickland v. Washington*, 466 U.S. at 687.   Were it assumed that counsel performed deficiently by basing the trial strategy upon innocence, Avila cannot show a reasonable probability that a different path would have led to a different result.  *See id.* at 694.  Had counsel based his strategy upon accident or anger, the State, through the testimony of Dr. Contin, still could have argued its multiple-blow theory.  20 RR 36, 41, 57.  Indeed, Dr. Wilson himself could not rule out the theory that Nicolas received many blows.  Pet.; App'x A at 7.  The evidence largely would have been the same.  Avila cannot show that the presumed support that Dr. Wilson would have given Dr. Rodriguez reasonably would have led to a different result.  *See Strickland v. Washington*, 466 U.S. at 687.

Were it presumed that counsel performed deficiently not in choosing an actual-innocence strategy but in executing the strategy, Avila does not show that the testimony of Dr. Wilson would have led to a different result.  *See id.*  As mentioned in Section I.B.1.a., *supra*,  where the strategy is based not upon accident or anger but upon innocence, the testimony of Dr. Wilson would have harmed the defense.  Dr. Wilson's testimony would have suggested that Avila alone was capable of killing Nicolas with a single blow.  Avila does not show a reasonable probability that Dr. Wilson's testimony would have led to a different result.  *See Strickland v. Washington*, 466 U.S. at 687.

Were it presumed that counsel, in fact, based his strategy upon anger or accident, the testimony of Dr. Wilson would have made no difference.  *See id.*  Dr. Wilson's testimony would have duplicated that of Dr. Rodriguez. 22 RR 16 (Dr. Rodriguez: "[M]y findings were that this could have been explained by just only [sic] one event of trauma.").  Dr. Wilson

-28-

could not have negated the State's multiple-blow theory. Pet.; App'x A at 7. The issue of the number of blows would have led to a credibility choice between the testimony of Dr. Wilson and the county coroner, Dr. Contin. 20 RR 41 (Dr. Contin: "They are four separate injuries."). Avila does not show a reasonable probability that the jurors would have found the testimony of Dr. Wilson more persuasive. *See Strickland v. Washington*, 466 U.S. at 687. Avila does not show that even had the jurors found Dr. Wilson's testimony more credible, they would have concluded that the single-blow theory negated the required mens rea. *See id.*

### B. At sentencing, a theory suggesting that Avila killed a child with a single blow shows Avila to be not a lesser danger but a greater danger.

Where a petitioner wishes to show that deficient counsel performance led to prejudice at the sentencing phase of a capital trial, the petitioner must establish a "reasonable probability" that absent the errors of counsel, the jury would not have imposed the death sentence. *See Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997).

Avila does not show that had Dr. Wilson testified about his single-blow opinion, the jurors would not have assessed death. *See id.* Dr. Wilson's testimony would have duplicated that of Dr. Rodriguez. Further, evidence showing that Avila could slay with a single blow and that he was willing with no notice to use deadly force on an infant shows him to be not a lesser but a greater danger. *See* art. 37.071, § 2(b)(1).

Avila does not show that the decision of the state habeas court involved an unreasonable application of the Sixth Amendment standard set out in *Strickland*. *See* § 2254(d)(1).

**III.   No Clearly Established Federal Law Suggests That the Constitution Requires the State to Bear the Burden of Negating the Existence of Mitigating Evidence.**

Avila alleges that he was deprived of an impartial jury and due process because the jurors at sentencing were not required to find, beyond a reasonable doubt, that mitigating evidence was not sufficient to warrant a life sentence. Pet. at 127-41. When Avila presented this claim to the state court, *Ex parte Avila* at 64-70, the court determined that on the general mitigation issue no burden of proof was assigned. *Id.* at 221, para. 26. The court determined that the case upon which Avila relied, *Ring v. Arizona*, 536 U.S. 584 (2002), did not change settled law, namely, that on the mitigation issue, neither party bears the burden of proof. *Id.* at 226, para. 47.   The court said also that the failure to assign the burden led to no constitutional violation. *Id.*

To the extent that Avila alleges that the jurors were not told the level of proof needed for a negative answer to the mitigation question, the record does not support Avila's allegation.   In answering the mitigation question, the jurors were required to determine that the answer to the mitigation question was "no" beyond a reasonable doubt. Tr 394. Hence, insofar as Avila complains only about the lack of a standard of proof, he does not show himself entitled to relief. *See Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983) (stating that absent evidence, court cannot consider bald assertions in petition, unsupported and unsupportable by anything else contained in the record, to be probative).

To the extent that Avila complains instead that the statute fails to assign a burden of proof to the State, he fails to show himself entitled to relief.   To be entitled to relief, a petitioner must show that the decision of the state court involved an unreasonable application of clearly established federal law as established by the Supreme Court of the United States. *See* § 2254(d)(1).   Avila does not carry that burden.   He cites no clearly established federal

law suggesting that the Sixth or Fourteenth Amendment requires the State to prove beyond a reasonable doubt the absence of mitigating evidence. The cases upon which Avila relies, *Ring v. Arizona*, 536 U.S. 584, and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), do not require the relief he seeks. The cases cited require only that a fact must be found beyond a reasonable doubt where that finding increases a defendant's punishment above the statutory minimum. *See Apprendi v. New Jersey*, 530 U.S. at 490. The requirement applies even where the legislature has described the required fact not as an element of the offense but as a sentencing element. *See Ring v. Arizona*, 536 U.S. at 609.

Although the State must prove to a jury a fact beyond a reasonable doubt where that finding increases the punishment, or is aggravating, *see Apprendi v. New Jersey*, 530 U.S. at 490, a State need not prove a fact, or the absence of a fact, beyond a reasonable doubt where the finding, or lack of finding, decreases punishment, or is mitigating. Put another way, no clearly established federal law places upon the State the burden of showing that no mitigating facts exist. Indeed, no circuit or Supreme Court precedent requires that the burden of proving the mitigation issue be assigned to either party. *See Rowell v. Dretke*, 398 F.3d 370, 378 (5th Cir.), *cert. denied*, 126 S. Ct. 103 (2005).

Avila tries to prove through semantics what he cannot show through logic. He describes the statute as being unconstitutional because it fails to require the State to prove "no mitigation" beyond a reasonable doubt. Pet. at 127. A "no" answer to the mitigation question, Tr 394, is more accurately described not as the State's proving "no mitigation," but as the jurors' "failing to find" sufficient mitigation.[9] By trying to place the burden on the

---

[9] *See* Act of May 8, 1999, 76th Leg., R.S., ch. 140, § 1, 1999 Tex. Gen. Laws 600. The current version of the statute refers to the possibility of the defendant's being sentenced to life without the possibility of parole. *See* TEX. CODE CRIM. PROC. art. 37.071, § 2(e)(1)

State, Avila tries to place the State in a position that is not tenable, that of trying to prove a negative.

Second, to the extent that the statute assigns no burden and establishes no standard of proof, the lack of a burden and standard inures to Avila's benefit. For the death penalty to be assessed, the jurors' failure to find mitigation must be unanimous. *See* art. 37.071, § 2(d)(2). On the other hand, the death penalty is foreclosed so long as mitigation is found sufficient by a single juror. *Id.* at § 2(g). Further, although here the jurors were told that they were to answer the mitigation question "no" only when they found mitigation insufficient "beyond a reasonable doubt," Tr 394, Avila was assigned no standard of proof to establish the sufficiency of mitigation; that is, a juror could have given effect to evidence that was a mere scintilla.

Avila fails to show that the decision of the state court involved an unreasonable application of clearly established federal law, particularly that federal law set out in *Apprendi* and *Ring*. *See* § 2254(d)(1).

Even if this Court wished to announce a rule assigning a burden of proof in connection with the presentation of mitigating evidence, this Court may not do so in this habeas proceeding. *See Teague v. Lane*, 489 U.S. at 301 (stating that federal court may not create new constitutional rules of criminal procedure on habeas review).

---

(West 2006). At the time of the offense, February 2000, life without parole was not an option. For the sake of convenience, however, because parole is not an issue in this case, this pleading will refer to the statute in effect at the time of the offense using the current statute.

IV.  **Because the Constitution Does Not Require the State to Bear the Burden of Negating Mitigation, Counsel Need Not Raise the Issue on Appeal.**

Avila alleges he received ineffective assistance when his counsel on appeal failed to lodge a claim that the trial court erred by failing to instruct the jurors that they must find the absence of mitigation beyond a reasonable doubt. Pet. at 141-44.

When Avila raised this issue before the state court, *Ex parte Avila* at 70-73, the court determined that although the trial court assigned no burden of proof on mitigation, *id.* at 221, para. 26, because no assignment was required, counsel was not ineffective in failing to complain on appeal. *Id.* at 226, para. 47.

As discussed in Section III, *supra*, the Constitution does not require that a burden of proof be assigned on mitigation; hence, counsel did not perform deficiently in failing to raise the issue. *See Strickland v. Washington*, 466 U.S. at 687. Even were this Court to assume that counsel performed deficiently by failing to raise the issue on appeal, Avila can show no harm. *See id.* In connection with Avila's claim, whatever review Avila would have received on appeal, he received when his counsel raised the issue in state habeas proceedings. Put another way, Avila's state habeas counsel corrected whatever perceived errors were committed by appellate counsel.

V.  **The Jurors Could Give Effect to Avila's Good-Character Evidence in Deciding the Issue of Future Dangerousness.**

Avila alleges that he is being subjected to cruel and unusual punishment because at sentencing, the jurors had no means of giving effect to his mitigating evidence of good character. Pet. at 144-56. He alleges that the general mitigation special issue (1 Tr 384; *see* TEX. CODE CRIM. PROC. art. 37.071, § 2(e)(1) (West 2006)) allowed the jurors to give effect only to that mitigating evidence that reduced his "moral blameworthiness." Pet. at 46-47; *see* art. 37.071, § 2(f)(4). Because his good-character evidence did not necessarily reduce his

moral blameworthiness, he alleges, the jurors could not give effect to that evidence. Pet. at 149-50.

When Avila raised this issue in state habeas proceedings, *Ex parte Avila* at 35-39, the court determined that the trial court gave the jurors the required definitions and instructions. *Id.* at 220, paras. 17 (citing TEX. CODE CRIM. PROC. art. 37.071, § 2(f)(4)) & 18 (citing art. 37.071, § 2(e)). The court determined that any potential "narrowing problem" in the definition set out in Sec. 2(f)(4) was solved by the instruction under art. 37.071, § 2(e). *Ex parte Avila* at 223, para. 35. The court said that although mitigating evidence was defined as evidence that a "juror might regard as reducing a defendant's moral blameworthiness," the trial court's instructions pursuant to Sec. 2(e) gave the jurors a vehicle to respond to a broader range of mitigating evidence. *Id.* The court said that the sentencing system was constitutional on its face and as applied to Avila because the jurors, under Sec. 2(e), had a vehicle to give effect to whatever mitigating value they wished in connection with the character evidence independent of the question of culpability. *Id.*

Avila misconstrues Texas law. At sentencing, the jurors were asked: "Do yo find from the evidence beyond a reasonable doubt that there is a probability that [Avila] would commit criminal acts of violence that would constitute a continuing threat to society?" Tr 393; art. 37.071, § 2(b)(1).[10] If the jurors answered the question "yes," they then were asked:

> Do you find from the evidence, taking into consideration all of the evidence, including the circumstances of the offense, [Avila's] character and background, and the personal moral culpability of [Avila], that there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed?

_____

[10] Where a defendant is charged with capital murder as a party, the jurors also are given an antiparties charge. *See* art. 37.071, § 2(b)(2). Avila was not charged as a party. The jurors did not receive the antiparties charge.

-34-

1 Tr 394; *see* art. 37.071, § 2(e)(1).

The jurors were told that in answering the general mitigation question, they were to "consider mitigating evidence to be evidence that a juror might regard as reducing [Avila's] moral blameworthiness." Tr 391; art. 37.071, § 2(f)(4).

Even where the evidence of good character does not reduce a defendant's moral blameworthiness, *see* art. 37.071, § 2(f)(4), the evidence is relevant to the issue of future dangerousness. *See* art. 37.071, § 2(b)(1). Through that first special issue the jurors could give effect to Avila's evidence of good character. *See Graham v. Collins*, 506 U.S. 461, 475 (1993) (noting that defendant's evidence of good character relevant to the issue of future dangerousness); *Franklin v. Lynaugh*, 487 U.S. 164, 179 (1988) (noting jurors in considering question of future dangerousness could give effect to petitioner's clean prison record); *Jurek v. Texas*, 428 U.S. 262, 267 (1976) (noting that future dangerousness question gives jurors vehicle for giving effect to evidence of defendant's steady employment and his contribution to his support of his family); *Butler v. State*, 872 S.W.2d 227, 240 (Tex. Crim. App. 1994) ("Evidence of good character is within the scope of the special issues."). Avila misconstrues the purpose of the special issue on general mitigation. *See* art. 37.071, § 2(e)(1). The issue was enacted to give the jurors a vehicle by which they could give effect to the mitigating aspects of evidence, not of good character, but of mental retardation or childhood abuse, evidence that could be both mitigating and aggravating. *See Penry v. Lynaugh*, 492 U.S. 302, 323-24 (1989). Even if this Court takes as true Avila's assertion that the general mitigation question, *see* art. 37.071, § 2(e)(1), gave the jurors no vehicle to give effect to evidence of his good character, the jurors could give effect to that evidence when they considered the question of future dangerousness. *See Graham v. Collins*, 506 U.S. at 475; *Franklin v. Lynaugh*, 487 U.S. at 179; *Jurek v. Texas*, 428 U.S. at 267. The Constitution requires no

-35-

more.

The decision reached by the state habeas court did not involve an unreasonable application of clearly established federal law. *See* § 2254(d)(1). Further, even if the Court were inclined to announce a rule, it could not do so in this habeas proceeding. *See Teague v. Lane*, 489 U.S. at 301.

## RESPONSE IN OPPOSITION TO MOTION
## FOR AN EVIDENTIARY HEARING

Avila seeks an evidentiary hearing. [Docket No. 15].[11] He wishes to offer evidence in connection with (1) whether Dr. Wilson recounted his single-blow opinion to the prosecutors before trial [Mot. at 3-8] and (2) trial counsel's reasons for not discovering and presenting Dr. Wilson's opinion at trial [Mot. at 8-12]. Avila is entitled to no hearing.

In federal habeas proceedings, a district court need not grant a hearing where the court has before it sufficient facts to make an informed decision on the merits of the petitioner's claim. *See Dowthitt v. Johnson*, 30 F.3d 733, 758 (5th Cir. 2000).

As shown in Section I.B.1.a., *supra*, even if it is assumed that the prosecutors withheld Dr. Wilson's opinion from the defense, Avila does not show that the opinion would have been helpful. *See Moore v. Illinois*, 408 U.S. at 794-95. His defense was based not upon his having acted in anger but upon his being innocent. Hence, in connection with Avila's *Brady* claim, were this Court to conduct a hearing, find Dr. Wilson's testimony credible, and find the prosecutor's testimony not credible, Avila still could not show himself entitled to relief. Dr. Wilson's presumed testimony, that Nicolas was killed by a single blow, would harm Avila's defense. The testimony would make more likely that Nicolas was struck shortly

---

[11] Pet'r's Mot. For Evid. Hr'g, *Avila v. Dretke*, No. EP-04-CA-419-FM (W.D. Tex. Sept. 19, 2005).

before he was taken to the hospital, during a period when Avila had sole access to the child. Evidence that Nicolas was struck several times allowed the defense to suggest that the child had received blows over several days, during times when Avila either had no access or not exclusive access to the child.

Even were Dr. Wilson's opinion exculpatory, Avila still would not be entitled to a hearing. *See Dowthitt v. Johnson*, 30 F.3d at 758. The state court already has conducted a paper hearing and made its credibility determination. *See Guidry v. Dretke*, 397 F.3d at 325. The findings are supported by the record and are to be presumed correct. *See Demosthenes v. Baal*, 495 U.S. at 735. Even if this Court disagreed with those findings, the Court may not go behind those findings and make different credibility choices. *See Guidry v. Dretke*, 397 F.3d at 325.

Further, even if one were to assume that the prosecutors failed to relay Dr. Wilson's opinion to the defense, Avila can show no harm. *See Dowthitt v. Johnson*, 30 F.3d at 758. To the extent that he wished to do so, Avila could present the single-blow opinion through the testimony of Dr. Rodriguez.

Further, the defense knew or should have known of Dr. Wilson's suspicions through the conversation between Drs. Wilson and Rodriguez and through Dr. Wilson's surgical report. Hence, even if Dr. Wilson testified that he told the prosecutors of his opinion and the prosecutors failed to relay that opinion, the prosecutors cannot be said to have withheld the opinion. *See Kutzner v. Cockrell*, 303 F.3d at 336.

Nor is Avila entitled to a hearing in connection with his ineffective assistance claim. *See Dowthitt v. Johnson*, 30 F.3d at 758. Because Avila's defense was based upon innocence, counsel was not deficient for failing to investigate and present Dr. Wilson's single-blow opinion. *See Strickland v. Washington*, 466 U.S. at 687. Dr. Wilson's single-

-37-

blow opinion, when used in an innocence defense, was not exculpatory but inculpatory. Hence, even were defense counsel to testify that he failed to discover and present Dr. Wilson's single-blow opinion, Avila would not show himself entitled to relief. A single-blow opinion would not have been helpful for Avila's innocence defense. *See Dowthitt v. Johnson*, 30 F.3d at 758. At punishment, moreover, the opinion would have shown Avila to be a greater, not a lesser, danger. *See* art. 37.071, § 2(b)(1).

Further, although in his petition, Avila could have complained about counsel's innocence-based strategy, Avila failed to do so. Pet. at 56-109. Also, counsel's strategy likely was based upon information given counsel by Avila himself.

Avila is not entitled to a hearing. None of the evidence proffered, even taken at face value, entitles him to relief. *See Dowthitt v. Johnson*, 30 F.3d at 758.

## CONCLUSION

The Director asks this Court to deny Avila's federal petition for writ of habeas corpus with prejudice, to deny a certificate of appealability with regard to all issues here raised, and to deny his motion for an evidentiary hearing.

<div style="margin-left: 40%;">

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

BARRY R. McBEE
First Assistant Attorney General

DON CLEMMER
Deputy Attorney General
 for Criminal Justice

GENA BUNN
Assistant Attorney General
Chief, Postconviction Litigation Division

</div>

THOMAS M. JONES*
Assistant Attorney General
Postconviction Litigation Division
State Bar No. 00784357

*Attorney-In-Charge

P. O. Box 12548, Capitol Station
Austin, Texas  78711-2548
(512) 936-1400
Fax No. (512) 936-1280
E-mail: Thomas.Jones@oag.state.tx.us

ATTORNEYS FOR RESPONDENT


### CERTIFICATE OF SERVICE

I, Thomas M. Jones, Assistant Attorney General of Texas, certify that a true and correct copy of the above and foregoing Respondent Dretke's Original Answer with Brief in Support, Including Response in Opposition To Motion for an Evidentiary Hearing has been served by placing a copy in the mail, postage prepaid, on January 26, 2006, addressed to:

Counsel for Avila:

Chris K. Gober
424 E. Nueva
San Antonio TX 78205

Robin Norris
2408 Fir St.
El Paso TX 79925

THOMAS M. JONES
Assistant Attorney General

-39-